Peck, J.
The plaintiff in error prosecuted a suit in the Trumbull', common pleas to recover the agreed price of twenty-five barrels of whisky, sold and delivered by him to the defendant in error, in-July, 1854.
The case was tried by a jury, and resulted in a verdict in favor' of the defendant.
The plaintiff moved for a new trial, for alleged misdirection by the court to the jury, which motion was overruled, and judgment, rendered upon the verdict.
A bill of exceptions was taken to the decision of the court, and this petition is now prosecuted to reverse it.
It appears from the bill of exceptions that, at the trial, evidence-was given on the part of the defendant tending *to show that, the whisky had not been inspected when it was sold, and received by the defendant; and on the part of the plaintiff, that the probate-judge of Licking county, where the plaintiff resided and where thewhisky was sold, had wholly neglected to appoint any inspector for-the county, though requested so to do by the plaintiff. The court,, thereupon, among other things, charged the jury as follows:
*455 “ That if the whisky sold and delivered by the plaintiff to the defendant was not inspected as required by law, the plaintiff could not recover the price agreed to be paid therefor by the defendant, and that this rule was not changed by the neglect of the probate judge of Licking county to appoint an inspector.”
This instruction is claimed to be erroneous, and good ground for reversal of the judgment.
Section 1 of the “act to prevent the adulteration of alcoholic liquors,” passed May 1, 1854, and in force when the sale by the plaintiff to the defendant was made, after prohibiting the adulteration, by any person, of any spirituous or alcoholic liquors, and the selling or offering to sell any such liquors, knowing the same to be adulterated, proceeds as follows: “ Or shall sell or offer to sell any spirituous or intoxicating liquors not inspected as hereinafter provided, he, she, or they shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not exceeding five hundred dollars, nor less than one hundred dollars, and shall be imprisoned in the jail of. the county not more than thirty nor less than ton days.”
By section 2, the probate judge in each county in the state is required to appoint a competent chemist as inspector, “whose duty shall be to inspect all alcoholic liquors imported into or manufactured in the county in which he is inspector, unless the same shall have the inspector's brand of some other county in this state;” *and by section 4, such inspector is required to brand or mark the cask containing the liquor, as “pure” or “impure,” as it may be found upon such inspection.
It is not claimed that the whisky sold by the plaintiff was adulterated, and its manufacture or sale prohibited by the first clauses of the section, but-only that it had not been inspected; and the question therefore arises, whether a sale of pure and unadulterated whisky is prohibited by the act of May 1,1854, unless previously inspected in counties where no inspector has ever been appointed.
Prior to the passage-of this law, the trafile in spirituous liquors in large quantities was not only lawful, but employed much capital. This law took effect upon its passage, and its principal object was to prevent the manufacture and sale of adulterated liquor. The provision requiring an inspection was inserted to prevent surreptitious sales of unwholesome liquors, and provide a test of their purity; and not to prevent the sale of such as were pure. Was it *456 designed by the law to. suspend the traffic in pure liquors, until the several probate judges should appoint competent inspectors for their several counties, and until those judges should find persons willing to accept the office and discharge its duties? If so, the enactment would operate as a serious restraint upon the traffic, and in some localities amount to an entire prohibition. Laws in restraint of trade are never favored, and the phraseology of a law must be clear and conclusive, before a court will give it a construction which affects not only future operations but present investments. The words of the section are, if any person “ shall sell or offer to sell any spirituous or intoxicating liquors, not inspected as hereinafter providedand in the next section it is made the duty of the probate judge of each county to appoint a competent chemist, who is thereupon charged with the duty of inspecting and branding all alcoholic liquors imported into or manufactured within his county. Till this *duty has been discharged by the probate judge, no inspection can be had, and the vendor of liquor can, by no act of his, procure the appointment to be made. If, therefore, the probate judge should fail to appoint, as was the case in Licking county; or if he should fail to find a competent chemist within his county, as occurred in some localities; or if persons competent should utterly refuse to serve, as was also the case in other counties; what is to be done? His liquor is on hand, and he desires to sell it there; but, without any fault on his part, there is no inspector in his county. An inspector appointed in another county could not inspect it for him where it is, for the authority of such inspector is limited to the county in which he was appointed. The dealer must either cart or transport it to some county where there is such an officer, and when inspected, transport it back to his residence ; or else suspend his operations until the probate judge consents to appoint, and competent persons consent to serve. If he could by a mandamus compel a reluctant judge to act, which is at least questionable, there are no means provided for compelling an appointee to serve, or of conferring capacity upon those who aro incompetent to discharge the duties. The statute, fairly construed, does not, wo think, lead to any such inequitable results. The law prohibits the selling of alcoholic liquors which have not been inspected as thereinafter provided, and charges the duty of appointing the inspector to make it upon one of the public functionaries, and until an inspector has been thus appointed and has accepted *457 and qualified under the act, the inspection spoken of, to be “ there inafter provided,” has not in fact been furnished to the owner of the alcoholic liquors. The law evidently contemplates, that the facilities for making the inspection shall be afforded to the owner, and of which he may avail himself, if disposed to do so; and then, very properly, requires him to have the inspection made or to abstain from selling. This construction, reasonable in itself, and perfectly consistent *with the language employed, relieves the act from the grave objections that would otherwise attach to it. It is not, then, an unreasonable restraint upon a trade lawful it itself, but a mere police regulation, which the health and security of the community eminently demand. Should any person manufacture, import, or sell adulterated liquors, knowing them to be such, he would come within the prohibitions of the law, and be subject to its penalties, though there were no county inspector; but, in our-opinion, the vendor of spirituous or intoxicating liquors, which are pure, though not inspected, is not within the prohibitions of the law, nor subject to its penalties, unless an inspector, of whose services he might avail himself, has been appjointed within the county. The penalty and prohibition go hand in hand, and he is not subject to the one, unless liable to the other. We are therefore of the opinion that the court below erred in charging the jury that the plaintiff could not recover for the whisky sold and delivered in Licking county, and not inspected, if the probate ju'dge of that county had neglected to appoint an inspector under the law.
The judgment of the court of common pleas of Trumbull county is, for this reason, reversed, and the cause remanded for further proceedings.
Brinkerhoee, C. L, and Scott and G-holson, JX, concurred.
Sutliee, X, having formerly been of counsel, did not sit in the case.